**WO**  JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Meyers, | No. CV 04-2087-PHX-JAT (HCE) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, et al., | |
| Defendants. | |

Plaintiff Paul Meyers filed this civil rights action pursuant to 42 U.S.C. § 1983 against Sheriff Joseph Arpaio and Maricopa County (Doc. #28, Second Am. Compl.). Before the Court are Defendants' Motion to Dismiss and the parties' cross-motions for summary judgment (Doc. ##52, 54, 56). The Court will grant in part and deny in part the Motion to Dismiss and Defendants' summary judgment motion and deny Plaintiff's motion.

**I.    Motion to Dismiss**

**A.    Background**

Plaintiff sued Sheriff Joseph Arpaio and alleged that he was subjected to unconstitutional living conditions at Maricopa County Durango Jail during his confinement from April 2004 to October 2004 (Doc. #6, First Am. Compl.). Plaintiff alleged that overcrowding at the jail constituted a threat to his safety, there were inadequate recreational opportunities, and the ventilation was insufficient (id.). Arpaio filed a Motion to Dismiss and contended that Plaintiff failed to exhaust his administrative remedies as required by the

Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. #10). The Court granted the motion on the lack-of-recreation and insufficient-ventilation claims, and they were dismissed without prejudice (Doc. #24). The motion was denied as to the overcrowding claim (Id.).

Plaintiff then moved to amend his First Amended Complaint for the purpose of adding Maricopa County as a Defendant (Doc. #23). Pursuant to the Local Rules, Plaintiff submitted a Second Amended Complaint, which named both Arpaio and the county as Defendants (Doc. #28). But the Second Amended Complaint also set forth the same claims as the First Amended Complaint: threat to safety due to overcrowding, lack of recreation, and insufficient ventilation (id.). The Court granted the motion to amend, and the Second Amended Complaint was docketed (Doc. ##27, 28). In its Order granting the motion, the Court did not address those claims that had already been determined to be unexhausted (Doc. #27).

As a result, Defendants filed a second Motion to Dismiss for lack of exhaustion of the three claims in Plaintiff's Second Amended Complaint (Doc. #52). Defendants set forth the same arguments that were presented in Arpaio's Motion to Dismiss; however, they also proffered the affidavit of Sergeant Richard Kabel, the bureau hearing officer whom Plaintiff alleged had denied him an appeal form when he sought to appeal his overcrowding grievance (Doc. #52, Ex. 2).[1] Kabel attested that he had no recollection of Plaintiff or whether Plaintiff requested an appeal form from him (id., Kabel Aff. ¶ 3). He further attested that had Plaintiff asked him for an appeal form, he would have either provided one or advised Plaintiff to obtain one from a detention officer (id.). Kabel avowed that he would not have told Plaintiff that he could not have an appeal form (id. ¶ 4).

The Court issued an Order informing Plaintiff of his obligation to respond to the motion and the evidence necessary to successfully rebut Defendants' contentions (Doc. #53).

---

[1] Plaintiff identified the bureau hearing officer as Sergeant Kabe rather than Kabel, and he indicated that the bureau hearing officer's badge number was 5803. Sergeant Kabel, badge number 5823, confirmed that he was the bureau hearing officer at Durango Jail during the relevant time (Doc. #19 at 2; Doc. #52, Ex. 2; Kabel Aff. ¶ 2).

- 2 -

Plaintiff submitted a response, and Defendants replied (Doc. ##60, 61).

### B. Analysis

For the same reasons set forth in the Court's previous Order on the exhaustion issue, Defendants' Motion to Dismiss will be granted in part and denied in part (See Doc. #24). Plaintiff's claims for lack of recreation and insufficient ventilation will be dismissed. On the overcrowding claim, Defendants' supplemental affidavit from Kabel—in which he admits to having no memory of Plaintiff—is insufficient to rebut Plaintiff's specific claims that he requested but was denied appeal forms from Kabel, the officers in the control bubble, and the grave yard shift officer (See Doc. #19). Defendants' contention that these attempts to obtain an appeal form were not diligent enough is unpersuasive (Doc. #52 at 7). Consequently, the motion will be denied on the overcrowding claim, and the claim will be addressed in the summary judgment analysis.

## II. Summary Judgment

### A. Legal Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its initial burden, the burden then shifts to the opposing party who must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250; see Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1220 (9th Cir. 1995). The opposing

1 party need not establish a material issue of fact conclusively in its favor; it is sufficient that 2 "the claimed factual dispute be shown to require a jury or judge to resolve the parties' 3 differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 4 253, 288-89 (1968).

5 When considering a summary judgment motion, the court examines the pleadings, 6 depositions, answers to interrogatories, and admissions on file, together with the affidavits, 7 if any. Fed. R. Civ. P. 56(c). The affidavits presented by the parties must "set forth such 8 facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). And the evidence of the 9 non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." 10 Anderson, 477 U.S. at 255.

11 **B.     Pretrial Detainee**

12 Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due 13 Process Clause, which protects against the use of excessive force that amounts to 14 punishment. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San 15 Diego, 942 F.2d 1435, 1440 (9th Cir. 1991). Because pretrial detainees' rights under the 16 Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, 17 the same standards are applied. Frost, 152 F.3d at 1128. Only deprivations denying the 18 minimal civilized measure of life's necessities are sufficiently grave for an Eighth 19 Amendment violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation 20 omitted). These are "deprivations of essential food, medical care, or sanitation" or "other 21 conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 22 (1981). In determining whether a violation has occurred, a court should consider the 23 circumstances, nature, and duration of a deprivation of these necessities. Johnson, 217 F.3d 24 at 731.

25 To state a § 1983 claim that jail conditions violated his Eighth Amendment rights, a 26 plaintiff must show that the defendant acted with deliberate indifference. Wilson v. Seiter, 27 501 U.S. 294 (1991). Officials are deliberately indifferent if they both know of and disregard 28 an excessive risk to inmate health; the official must both be aware of facts from which the

1 inference could be drawn that a substantial risk of serious harm exists and he must also draw
2 the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Requiring conduct that
3 amounts to deliberate indifference "provides an appropriate balance of the pretrial detainees'
4 right to not be punished with the deference given to prison officials to manage the prisons."
5 Redman, 942 F.2d at 1443. For a particular governmental action to constitute punishment,
6 the action must cause the detainee to suffer some harm or disability, and the purpose of the
7 action must be to punish the detainee. Demery v. Arpaio, 378 F.3d 1020,1029 (9th Cir.
8 2004) (citing Bell v. Wolfish, 441 U.S. 520, 538 (1979)). The harm or disability caused by
9 the government's action must either significantly exceed, or be independent of, the inherent
10 discomforts of confinement. Demery, 378 F.3d at 1030 (citing Bell, 441 U.S. at 537). If a
11 condition or governmental action is not reasonably related to a legitimate governmental
12 objective—"if it is arbitrary or purposeless"—a court may infer that the purpose of the
13 governmental action is punishment. Bell, 441 U.S. at 539.

### C. Overcrowding

15 The Supreme Court and Ninth Circuit have made clear that overcrowding alone is not
16 a violation of the Eighth Amendment. Rhodes, 452 U.S. at 345-350; Hoptowit v. Ray, 682
17 F.2d 1237, 1249 (9th Cir. 1982). But overcrowding may result in circumstances that do rise
18 to the level of Eighth Amendment violations. The Ninth Circuit has recognized "increased
19 violence" as one example of an Eighth Amendment violation that might result from
20 overcrowding. Hoptowit, 682 F.2d at 1249; see also Akao v. Shimoda, 832 F.2d 119, 120
21 (9th Cir. 1987) (*per curiam*) (reversing district court's dismissal of claim that overcrowding
22 caused increased stress, tension, communicable disease, and confrontation between inmates);
23 Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir. 1984) (constitutional violation may
24 occur as a result of overcrowded prison conditions engendering violence, tension and
25 psychiatric problems). The Supreme Court and Ninth Circuit have made clear, however, that
26 the increase in violence must be caused by the overcrowding, not merely by an increase in
27 the prison's population. Rhodes, 452 U.S. at 348-349; Hoptowit, 682 F.2d at 1249.
28 In its review of the parties' summary judgment motions, the Court will only address

1 the arguments and evidence submitted by the parties that relate to the overcrowding
2 allegations. Any evidence going to the two dismissed claims or concerning an alleged
3 incident of excessive force prior to Plaintiff's transfer to the Durango Jail will not be
4 considered in the summary judgment analysis.

5 **III.   Defendants' Motion for Summary Judgment**

6 Defendants' argument in support of their summary judgment motion rests on four
7 issues: (1) *respondeat superior*; (2) compensatory damages under 42 U.S.C. § 1997e(e); (3)
8 liability for a constitutional violation; and (4) punitive damages (Doc. #54).

9 **A.   *Respondeat Superior***

10 Defendants are correct that supervisory officials and municipalities may not be held
11 liable under § 1983 on the basis of *respondeat superior* (Doc. #54 at 5). Defendants cite to
12 a sentence in Plaintiff's Second Amendment Complaint that states the "County is liable for
13 it's [sic] employees" and argue that this amounts to a claim under *respondeat superior* that
14 must be dismissed (Id. at 5).

15 Supervisory liability under § 1983 exists if the official implements a policy so
16 deficient that the policy itself is a repudiation of constitutional rights and is the moving force
17 behind the constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)
18 (internal citations and quotations omitted). Likewise, a supervisor may be liable for the
19 actions of a subordinate if the supervisor had knowledge of violations and failed to act to
20 prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). To state a claim for
21 supervisory liability, a § 1983 plaintiff must establish a causal connection between a
22 supervisor's act or omission and the constitutional deprivation. Johnson v. Duffy, 588 F.2d
23 740, 743-44 (9th Cir. 1978). In the Eighth Amendment context, a supervisor is liable for
24 deliberate indifference when his policies constitute a moving force behind an inmate's
25 constitutional infringement. Redman, 942 F.2d at 1447-48 (holding that supervisor could be
26 found liable for deficient policies in response to prison overcrowding, which posed a serious
27 safety risk to inmate personal security).

28 Plaintiff alleges that Arpaio established the policies for and oversaw the operations

1 of Durango Jail (Doc. #28 at 4-A). He claims that Arpaio "deliberately [promoted]
2 punishment on me, detainees, and his deliberate indifference. He could post guards in the
3 overcrowded pods for protection" (id. at 4-B). Plaintiff's allegations, described in more
4 detail below, suggest that he was subjected to assaults and violence on a daily basis as a
5 result of the overcrowded conditions (Doc. #28 at 4; Doc. #58, Pl.'s Statement of Facts
6 (PSOF) ¶¶ 3, 11-13). In addition, Plaintiff specifically alleged that Arpaio was aware of the
7 "wide spread abuse and violations" in the jail (Doc. #28 at 4-B).

8 Defendants did not submit any evidence, such as an affidavit, to demonstrate that
9 Arpaio was not aware of the alleged overcrowding or violations stemming therefrom.
10 Rather, Defendants admit that they were aware of the crowding at the jail but argue that it
11 was an incident of a legitimate governmental purpose and that two new jails were built to
12 alleviate the problem (Doc. #54 at 10-11; Doc. #55, Ex. 3, Frye Aff. ¶ 6). This argument
13 does not show an absence of a material fact as to whether Arpaio had knowledge of the
14 alleged violent conditions and failed to act to prevent them. Consequently, Defendants'
15 claim for summary judgment under *respondeat superior* is not warranted.

### B. Compensatory Damages Under 42 U.S.C. § 1997e(e)

17 Defendants contend that Plaintiff's claim for compensatory damages is barred because
18 he failed to allege a physical injury as required under § 1997e(e) of the PLRA (Doc. #20).
19 Defendants argue that Plaintiff's alleged injuries are *de minimis* and therefore cannot sustain
20 a claim.

21 The PLRA provides that "[n]o Federal civil action may be brought by a prisoner
22 confined in a jail, prison, or other correctional facility, for mental or emotional injury
23 suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).
24 The physical injury "need not be significant but must be more than *de minimis*." Oliver v.
25 Keller, 289 F.3d 623, 627 (9th Cir. 2002). The physical injury requirement applies only to
26 claims for mental or emotional injuries and does not bar claims for compensatory, nominal
27 or punitive damages. Id. at 630.

28 In Oliver, the Ninth Circuit found that back and leg pain, a painful canker sore, and

1 undefined injuries from an assault by another prisoner were not more than *de minimis*. Here, Plaintiff's injuries—fear of physical confrontations and mental punishment—are likewise not more than *de minimis*. Moreover, Plaintiff made no allegation that he suffered long-term or permanent injury as a result of the violent conditions caused by overcrowding. The Court finds that Plaintiff suffered no more than *de minimis* physical injuries, which do not satisfy the requirement under § 1997e(e), and is therefore not entitled to damages for emotional injury. See Oliver, 289 F.3d at 627-29.

But this conclusion does not bar Plaintiff's claims for compensatory, nominal, and punitive damages not premised on emotional injury. In Oliver, the plaintiff's complaint sought punitive damages and was construed to be "consistent with a claim for nominal damages." Id. at 630. The Court determined that even absent physical injury, a prisoner was entitled to seek compensatory, nominal and punitive damages premised on violations of his Fourteenth Amendment rights. Id. at 629-30. Plaintiff alleged a violation of his constitutional rights and specifically sought relief for medical damages, costs, and punitive damages (Doc. #28 at 4, 4B-5). Thus, to the extent that Plaintiff has actionable claims for compensatory, nominal, and punitive damages based on violations of his Eighth and Fourteenth Amendment rights, his claims are not barred by § 1997e(e).

### C. Liability for a Constitutional Deprivation

Defendants contend that the crowded conditions at Durango Jail did not constitute a Fourteenth Amendment violation. They submit evidence that they were aware of the increasing jail population and that to alleviate the crowding problem, the county began construction on two new jail facilities in 1999 (Doc. #55, Ex. 3, Fry Aff. ¶¶ 6-8). These jail facilities began housing inmates in April 2005 (id. ¶ 6). Defendants assert that they are obligated under state law to house pretrial detainees and assure their appearance in court. Thus, they argue that crowding at the jail is an incident of a legitimate governmental purpose; it is not punishment (Doc. #54 at 10-11). Defendants submit the affidavit of Lieutenant Scott Frye, a 30-year veteran of the county sheriff's office who has been the Executive Lieutenant at Durango Jail for the last 2 ½ years (Doc. #55, Ex. 3, Frye Aff. ¶ 1). Frye attests that while

1 Plaintiff was housed at Durango Jail, there were approximately 80 inmates in his pod (id.
2 ¶ 3). Frye further attests that he is unaware of any evidence that the increase in the number
3 of inmates at Durango Jail increased the number of assaults or the level of violence (id. ¶ 9).
4 He avows that at all times inmates at the jail were provided with basic needs such as food,
5 shelter, and clothing (id. ¶ 13).

6 Defendants have proffered evidence that overcrowding at the jail was not deliberate
7 and that it did not result in either an increase in violence or the denial of any basic needs.
8 The burden now shifts to Plaintiff, and the question the Court must answer in ruling on
9 Defendants' motion is whether Plaintiff has produced sufficient evidence for a reasonable
10 jury to conclude that Plaintiff was exposed to violence as a result of overcrowding at the jail.
11 In making this decision, the Court must believe Plaintiff's evidence and draw all justifiable
12 inferences in his favor. Anderson, 477 U.S. at 248.

13 In his verified Second Amended Complaint, Plaintiff alleged that although the pod he
14 was housed in was designed to hold 30 inmates, over 120 inmates were confined there (Doc.
15 #28 at 4).[2] Plaintiff explained that only 25 of these 120-plus inmates were allowed out for
16 recreation, and the 25 earned that opportunity by being the first 25 to run out when the
17 detention officers opened the pod door (id.). Plaintiff alleged that there were no officers in
18 the pod to stop the assaults that occurred as inmates fought for spots in line to go out to
19 recreation. In his sworn statement of facts, Plaintiff made the following allegations:

20 1. "Plaintiff was sent to Durango Jail where he was assaulted and placed on the floor for six months because of excessive overcrowding. He faced threats, violence, tension,
21 excessive noise and communicable deseases [sic] on a daily basis" (Doc. #58, PSOF ¶ 3).

22 2. "Durango Jail has (16) cells that are double bunked to (32) persons . . . you have to squeeze between the bunks to go in or out the cell. Twelve (12) more double are placed
23 in the day room area and inmates are lined up on the floor in 'every space' available up to the toilet-shower areas. Excess of 120 in a space designed for (32) max capacity. You have
24 to walk over people to move and this created a very inhumane, violent, and unsanitary jail. This is not a goverment [sic] goal" (id. ¶ 6).
25
26 3. "No officers were in the overcrowded pods to provide safety . . . When I got into

27 [2]A verified complaint may be used as an affidavit opposing summary judgment if it
28 is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

- 9 -

1  an overcrowded recreation or phone line I received physical violence and threats on daily basis. I was assaulted for food and my store was taken and stolen by force" (id. ¶ 11).

2  4. "There was excessive noise-fights and violence broke out on day by day basis because a person could not sleep or speak on the phone" (id. ¶ 12).

5. "There was increased stress/tensions, because so many people packed into one area dayroom that you had to walk over people on the floor to eat, use the phone, or toilet area. The crowding caused fights and riots" (id. ¶ 13).

Plaintiff's other evidence—numerous copies of Health Inspection Reports, which detailed the County Health Inspections done at Durango Jail—simply support what Defendants admit; there was overcrowding at the jail (Doc. #58, Ex. A; Doc. #59, Ex. 2).[3]

Defendants did not dispute any of the facts in Plaintiff sworn statements; rather, they contend that Plaintiff's statements are "conclusory and unsupported" (Doc. #64 at 2). But Plaintiff adequately set forth the underlying facts on which his claims were based, and his statements were made on personal knowledge and established facts that would be admissible in evidence. See Fed. R. Civ. P. 56(e). Defendants' only response to the claims of assaults and violence is Frye's averment that he was personally unaware of any evidence that there was an increase in the number of assaults at the jail during Plaintiff's confinement (Doc. #55, Ex. 3, Frye Aff. ¶ 9).

If Plaintiff had merely alleged that the overcrowding itself constituted mistreatment, Defendants' evidence that they made attempts to alleviate the problem by building two new jails would preclude a finding of deliberate indifference. The crux of Plaintiff's claim, however, is the alleged increase in violence and threats to his personal safety that resulted from the overcrowding. As stated, the Ninth Circuit has determined that this type of deleterious effect rises to the level of an Eighth Amendment violation. See Akao, 832 F.2d at 120; Toussaint, 722 F.2d at 1492; Hoptowit, 682 F.2d at 1249. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has raised a question

---

[3] Excessive crowding at Durango Jail was noted in the Health Inspection Reports dated May 18, June 30, July 27, and August 18, 2004 (id. 9; Doc. #59, Ex. B at 2; Doc. #58, Ex. A at 10). Defendants object to these reports on the grounds that they are inadmissible and not relevant (Doc. # 63 at 2-3). The objection will be overruled.

- 10 -

1  of fact concerning whether Defendants were aware of or should have known that
2  overcrowding at the jail exposed Plaintiff to assaults and violent conditions sufficient to
3  create a constitutional violation. Defendants' motion will therefore be denied.

### D. Punitive Damages

Government officials sued in their official capacities are immune from punitive damages under § 1983. Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996). Thus, Plaintiff is not entitled to punitive damages against the county or Arpaio in his official capacity.

A jury may award punitive damages against a defendant in his individual capacity either when the defendant's conduct is driven by evil motive or intent or when it involves a reckless or callous indifference to the constitutional rights of others. Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) (quotation omitted). Defendants contend that Plaintiff failed to demonstrate that Arpaio acted with evil motive or callous indifference (Doc. #54 at 8). The Court finds that on the question of deliberate indifference to the risk to Plaintiff's safety, there is a question of fact as to whether the punitive and compensatory damages standard was met.

### IV. Plaintiff's Motion for Summary Judgment

Plaintiff argues that Defendants have admitted their intent to make jail conditions bad and have deliberately overcrowded the jails to achieve that objective (Doc. #56 at 1-2). Plaintiff contends that the risk to his safety was obvious and could have been prevented but that Arpaio deliberately chose not to protect inmates (id. at 2-3). In support of his motion, Plaintiff proffers copies of Health Inspection Reports, the affidavits of three other former jail inmates, copies of medical reports showing injuries Plaintiff incurred, and an Inmate Movement History report documenting that Plaintiff was housed on the floor of Durango Jail (Doc. #56, Exs. A-C).

As stated, the Health Inspection Reports merely support Plaintiff's claim that the jail was overcrowded, which Defendants concede. The three inmate affidavits do not relate to either the jail Plaintiff was housed in or to the time period during which he was confined (id., Ex. B). The medical reports submitted by Plaintiff are dated April 21, April 16, two from

- 11 -

April 18, and April 21, 2004, respectively (id., Ex. C). There is one medical report dated July 27, 2004, which reflects a lab immunity screening result (id.). Because Plaintiff was not transferred to Durango Jail until April 19, 2004, most of these medical records are not relevant to the overcrowding claim (id., Ex. C; See Doc. #56 at 4, Statement of Undisputed Facts ¶ 3). And the Inmate Movement History report that describes Plaintiff's location as "Durango Floor 1 House 5" is insufficient on its own to show deliberate indifference. Consequently, Plaintiff has failed to meet his initial burden of demonstrating the absence of a genuine issue of material fact that Defendants were deliberately indifferent to the violent conditions caused by overcrowding. See Farmer, 511 U.S. at 834; see also Celotex, 477 U.S. at 323. Plaintiff's motion will be denied.

**IT IS ORDERED:**

(1) Defendants' Motion to Dismiss (Doc. #52) is **granted** in part and **denied** in part. The motion is granted as to the lack-of-recreation and insufficient-ventilation claims. The motion is denied as to the overcrowding claim.

(2) Defendants' Motion for Summary Judgment (Doc. #54) is **granted** in part and **denied** in part as follows:

>   (a) the motion is **granted** to the extent that Plaintiff is not entitled to damages under 42 U.S.C. § 1997e(e) for emotional injury;
>   (b) the motion is **granted** to the extent that Plaintiff is not entitled to punitive damages against Maricopa County or Arpaio in his official capacity; and
>   (c) the motion is otherwise **denied.**

(3) Plaintiff's Motion for Summary Judgment (Doc. #56) is **denied**.

DATED this 3rd day of May, 2007.

James A. Teilborg
United States District Judge

- 12 -